

FLETCHER ASSET MANAGEMENT, INC.
48 WALL STREET, FOURTH FLOOR
NEW YORK, NY 10005
T: (212) 284-4800
F:(212) 284-4801
WWW.FLETCHER.COM

ALPHONSE FLETCHER, JR.
AFLETCHER@FLETCHER.COM

The Honorable William H. Pauley, III
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: Stewart Turner v. Richard L Davis (In re Fletcher International, Ltd.), 14 Civ. 02836 (WHP)**

Dear Judge Pauley:

     Mr. Luskin's misrepresentations of facts and law in his letters of July 3 and July 29 demonstrate how justice has been perverted to deny true stakeholders[1] a full and fair hearing. Mr. Luskin has obtained relief after hiding information from the Court, for example, orders approving retention and confirmation while denying more than a dozen undisclosed connections and interests required to be disclosed under Bankruptcy Rule 2014. He has obtained relief based upon false statements to the Court, for example, orders approving the United Community Banks, Inc. settlement based upon false representations of the maximum value of the estate's claim in the United Community Banks, Inc. dispute.

     In pursuit of a Rule 7 bond, Mr. Luskin continues to seek undeserved relief on the basis of misrepresentations to the Court. He falsely argues his violations that I allege should be disregarded because I failed to meet a "final deadline" for detailing the undisclosed connections of fiduciaries in these associated cases. In fact, the Court gave "whatever time Mr. Fletcher needs to prepare a brief" and granted Mr. Luskin's request for a "status conference" in 30 days while offering me more "if you need the extra time." Beyond ironic is the notion that Mr. Luskin seeks to hold me responsible for his failure to meet his disclosure obligations then mock the significance of two connections which he previously denied. Mr. Luskin "arrogated to himself a disclosure decision that the Court must make." Granite Partners. I respectfully ask you to strike his letter and deny his request for a Rule 7 bond.

### Mr. Luskin's False Statements, Omissions, and Wrongful Acts Have Perverted Justice.

     Mr. Luskin's letter's falsely alleges that my claims of unlawful retaliation by parties with undisclosed connections to the trustee and his advisors harmed to Fletcher International, Ltd. and its affiliates including me are "unspecified," are "new claims," that "were never raised in the Bankruptcy Court and cannot be raised now" and that I have "not provided an explanation" of the harm. In fact, since 2013, these allegations have been raised more than a dozen times.

July 31, 2014

Filings in this appeal (see Fletcher letter to Judge Pauley of April 28, 2014) include some of those documents that detail the harm that has resulted from unlawful retaliation by parties with connections to the fiduciaries in these associated cases.

Especially in the context of his coordination with others, Mr. Luskin's actions have been "impeding" our counsel, "hindering" our legal representation, and "obstructing" our participation in these proceedings. His violation of Bankruptcy Rule 2014, Bankruptcy Code 326 and 327, and his ethical duties as an officer of the Court are "defeating the course of justice." Such flagrant and well-documented violations, in the context of undisclosed connections to those accused of carrying out their threatened unlawful retaliation, suggests that Mr. Luskin and his comrades have acted in state, federal, and foreign proceedings with the "intent to deny Defendants the equal protection of the laws, or to injure them or their property for lawfully enforcing, or attempting to enforce, their rights and the rights of other people and classes of people, to the equal protection of the laws."[2]

### Evidence of An Inability to Post a Bond is Widely Available Due to the Harm Done by the Unlawful Retaliation.

The harm done by the unlawful retaliation of parties with connections to the fiduciaries in these Associated Cases has been widely reported in media and in these proceedings. The trustee has given interviews to publications owned by his former client News Corporation. Those publications have reported extensively on my negative experience in these proceedings. They have reported that my attorneys withdrew for lack of payment and are litigating with the trustee and me over fees[3], that the IRS has filed a tax lien against Fletcher to secure taxes it is owed on profits which Fletcher cannot access due to these proceedings[4], that a Cayman judge declared one of Fletcher's primary funds insolvent[5], that trustee Richard J. Davis issued a scathing report[6] (but never mentioned Judge Gerber's requirement that the report be edited to state that it is merely the trustee's opinions not fact). Even if the trustee refuses to list his client as a "connection" under Bankruptcy Rule 2014, he would be less than sincere to feign ignorance of the harm I have suffered that has been widely reported by his client with his personal assistance.

Further, the team of which I am a member, despite chapter 11 "protection," contributed substantial labor while not being paid and still has not been paid. Debtors' counsel Warren Martin explained in a hearing in the Associated Case, *In re Soundview Elite Ltd et al*, at a March 19, 2014 hearing (pages 12 and 13).

> This is the only time in my history...[that]...the folks that I was working with, giving me direction, producing documents available at all hours of the day and night, were not being paid at all.[7]

Mr. Martin decried this situation as unfair considering the fact that team was subjected to a five day trial after which the Bankruptcy Court ruled: "I do not yet find, if I ever well, that the Debtors' management has acted fraudulently or incompetently."[8]

> And I think it's basic notions of fairness and Thirteenth Amendment, and not the part about slavery but the part about involuntary servitude, which was abolished,

2

July 31, 2014

> as punishment for a crime. But we know that punishment for a crime requires due process first. So from the lowliest grunt, if I might use that word, to the loftiest director, at every moment that I worked this case over those very intensive four months, I heard again and again, when are we going to get paid?[9]

### The Unlawful Retaliation's Interference with My Participation in these Legal Proceedings Is In Fact "Well Documented."

My December 5, 2013 Affidavit in the Bankruptcy Court described the interference with our legal representation and our participation in these legal proceeding that resulted from the unlawful retaliation by parties connected to the fiduciaries in these cases.

> Currently, Fletcher Asset Management, Inc., Fletcher International, Inc. ("The Fletcher Companies") and I are unable to retain counsel. For more than a year, our banks, including Citco Bank, HSBC, United Community Banks, and JPMorgan Chase, have periodically refused to honor the valid instructions that we have sent them from properly authorized signatories. Additionally, many of our non-cash assets are restricted in multi-jurisdictional proceedings the results of which are unpredictable. We intend to address the issues with the banks soon and immediately thereafter intend to retain counsel.[10]

The Fletcher Direct Testimony/Affidavit[11] filed in Associated Case *In re Soundview Elite Ltd, et al, listed some of the "illegal retaliation" that led to the decision to seek* chapter 11 protection for the various debtors from "illegal retaliation." A defendant in a civil rights lawsuit filed by the debtors' affiliates including me[12] and that defendant's shareholders and allies "harmed the business" that Fletcher's team "spent 20 years building"[13]  The affidavit detailed allegations that the debtors and their affiliates have suffered threats [Id Ps 64,65,75, Exhibit O P7 and 153], intimidation of investors and other witnesses [Id Ps 28, 56-59, 72, 75-77, 86, 127-138], false tips to regulators [Id Ps 29, 30, 112], defamatory media campaigns [Id Ps 67-73, 81, 83], interference with banking relationships [Id Ps 102,103, 117-121], inducement of breaches of fiduciary duty [Id Ps 82, 101, 109-121], wrongful transfers of value from the estates [Id P1s 20, 127-141, UCB appeals], wrongful influence of proceedings, meritless litigation [Id Ps 27, 67-71, 134- 138, 142], hidden conflicts by fiduciaries and counsel[14].

Even the US automatic stay did not stop our adversaries' attacks despite Judge Gerber's repeated warnings and extraordinary patience.  In response to a Martin Luther King Day temporary restraining order request, Judge Gerber once again provided a warning:

> THE COURT: Okay. All right. Let me just say one other thing, and then I think we're done. Mr. Beha, unfortunately, you're the one up on the lectern now. I've got to talk to you.  I saw two references in your papers where you said the JOLs intend to move in the Grand Court of the Cayman Islands for similar relief in addition to this motion. I'm going to speak very, very softly, and I won't raise my voice. But don't even think about doing that, especially after your clients are on notice of what may be as many as eight past violations of the automatic stay, and what I said on the record as recently as closing arguments on this matter on January 7. The whole premise of your TRO application was that this was an interference with the property of the U.S. estate.  And then you're talking

> about going to the Cayman Islands to continue proceedings down there and to exercise even more property -- more control over what you intend or contend is property of the U.S. estate? Don't do it.[15]

Mr. Martin explained these surprising events, unique in his "twenty-eight years" and "the only time in my history," by pointing to the same conduct that I have argued is unlawful retaliatory litigation by parties connected to the fiduciaries in these cases: "vicious" litigation and the unfounded "allegations" that our adversaries failed to prove in the five day trial.

> I advised them that it was not the appropriate time, particularly in the middle of a vicious jurisdictional fight with captain-of-the-ship issues, with allegations of a fraud and self-dealing. And my answer every time was that when this fight is over, we will address that. And the other reason it wasn't the time is because every motion that was filed was objected to, as is pointed out in my fee application.[16]

### Mr. Luskin Misrepresents the First Two Factors of *Adsani* with the Intent to Prevent the Appeals Process from Being "Fairly and Equally Accessible to All Litigants"[17]

Mr. Luskin's letter begins by claiming that controlling precedent *Adsani*'s[18] "first two factors ... can be disposed of quickly" (Luskin p1). His reasoning eliminates any need for the first two factors because: In circumstances in which an appellant meets the first fact by providing "evidence" of an inability to pay a bond for costs, it would be "more likely that he would be unable to pay any costs" and so the second factor would require a bond for costs.

    Mr. Luskin's reading would effectively eliminate the first fact and "discriminate against litigants who cannot afford to post a bond" exactly the outcome *Adsani's* warns against. In fact, with respect to the second factor, the Courts in *Adsani* and *Currency Conversion Fee*[19], focused on procedural impediments to enforcement of any costs order. In Adsani, the Court focused on the fact that *Adsani*, "a resident of the United Kingdom with no assets in the United States," previously failed to post a different bond in earlier proceedings.[20] *In Currency Conversion Fee*, the Court wrote "the appellants are dispersed around the country, and Class Counsel would need to institute numerous collection actions to recover their costs." *In re General Electric Company*[21], the Court omits the second factor entirely.

    Such procedural impediments to enforcement of a costs order are not present in this matter. Appellee's familiarity with appellants' US citizenship and assets and ability to overcome procedural impediments is evidenced by appellee's wide-ranging, multi-million dollar investigation and actions already commenced against appellants. Those actions range from a claim of a $100 million fraudulent conveyance to return of approximately $100,000 in fees.

                                Sincerely,

                                  *[signature]*

                                Alphonse Fletcher, Jr.

Cc:    Mr. Michael Luskin
        Mr. Stewart Turner

July 31, 2014

[1] Mr. Luskin's lies to the Bankruptcy Court have undermined confidence in those proceedings. Stakeholders have told me in confidence that they have no trust in those proceedings and have fear that they will be targeted if they try to be heard. Such fears are warranted as demonstrated by the uneconomic attacks directed at Mr. Turner ever since he spoke the truth in his objection to the trustee's report and disclosure statement.

[2] Fletcher Discovery Affidavit of December 5, 2013, page 49; reference to 42 U.S.C. Section 1985

[3] "Dakota Case twists Again," *Wall Street Journal,* October 4, 2013, Josh Barbanel

[4] "Fund Manager In Dakota Suit Faces Tax Lien," *Wall Street Journal,* May 29, 2013, Josh Barbanel

[5] "Judge Orders Liquidation of a Fletcher Hedge Fund," *Wall Street Journal,* April 19, 2012, Josh Barbanel and Steve Eder

[6] "Bankrtupcy Trusteee Says Fletcher Investments Inflated Through Fraud," *Wall Street Journal,* November 27, 2013, Josh Barbanel and Steve Eder

[7] *In re Soundview Elite Ltd et al*, March 19, 2014 Hearing Comments of Warren Martin, Debtors Counsel, Transcript Pages 12

[8] Bench Decision of Honorable Robert E. Gerber, *In Soundview Elite Ltd et al*, January 23, 2014, page 14

[9] *In re Soundview Elite Ltd et al*, March 19, 2014 Hearing Comments of Warren Martin, Debtors Counsel, Transcript Pages 13

[10] Fletcher Discovery Affidavit, December 5, 2013, Para 5.

[11] Direct Testimony/Affidavit of Alphonse Fletcher, Jr. [Corrected], Para 65, Docket #118

[12] Appellant Fletcher eventually filed a lawsuit in February 2011 in an effort to stop the retaliation captioned "Alphonse Fletcher, Jr. and Fletcher Asset Management, Inc. v Dakota Inc., Bruce Barnes, and Peter Nitze" in Supreme Court of the State of New York. The Second Amended Verified Complaint is Exhibit O to the Direct Testimony/Affidavit of Alphonse Fletcher, Jr. [Corrected] Docket #118

[13] Direct Testimony/Affidavit of Alphonse Fletcher, Jr. [Corrected], Para 4, Docket #118,

[14] Also see, Disgorgment Order, Transcript for Disgorgment Hearing, and Fletcher March 21, 2014 Motion to Compel Compliance with Bankruptcy Code and Rules

[15] Transcript of Hearing of *Soundview Elite, Ltd. et al*, January 21, 2014, page 14

[16] *In re Soundview Elite Ltd et al*, March 19, 2014 Hearing Comments of Warren Martin, Debtors Counsel, Transcript Pages 13

[17] Adsani v. Miller, 139 F.3d 67 (2d Cir. 1998).

[18] Adsani v. Miller, 139 F.3d 67 (2d Cir. 1998).

[19] In re Currenc Conversion Fee Antitrust Litiation, 01 M.D.L. No. 1409 (WHP), 2010 U.S. Dist. LEXIS 27605 (S.D.N.Y. Mar. 5, 2010)

5

July 31, 2014

[20] Adsani v. Miller, 139 F.3d 67 (2d Cir. 1998).

[21] IN RE: GENERAL ELECTRIC COMPANY SECURITIES LITIGATION 09 Civ. 1951 (DLC) UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, 2014 U.S. Dist. LEXIS 17213; 87 Fed. R. Serv. 3d (Callaghan) 1397 (February 11, 2014, Decided February 11, 2014, Filed)

6

# Attachment 1

## Excerpt of Fletcher Discovery Affidavit of December 5, 2013

\* \* \*

5. Currently, Fletcher Asset Management, Inc., Fletcher International, Inc. ("The Fletcher Companies") and I are unable to retain counsel. For more than a year, our banks, including Citco Bank, HSBC, United Community Banks, and JPMorgan Chase, have periodically refused to honor the valid instructions that we have sent them from properly authorized signatories. Additionally, many of our non-cash assets are restricted in multi-jurisdictional proceedings the results of which are unpredictable. We intend to address the issues with the banks soon and immediately thereafter intend to retain counsel.

\* \* \*

13. Fletcher Asset Management, operating under increasing retaliation since circa 2008, has anticipated litigation and worked closely with its long-time counsel Skadden and with some affiliates in an effort comply with all law, rules, and contracts and to minimize litigation risk. In the event a privilege appears to be a joint privilege, the "realignment" of our relationships with certain affiliates that transpired in 2012 and 2013, caused us to invoke privilege after concluding that protecting due process required that our information divulged to our attorneys must remain confidential and not become available for use by adversaries. We are a small organization of a approximately a dozen people working hard to rehabilitate a set of affiliated companies that have endured an unfortunate series of adverse events over the past several years. This work including the preservation and realization of asset values has been made more difficult by the actions, which may not have been ill-intentioned or voluntary, of certain of our former attorneys and by certain parties that have obtained access to privileged and confidential information.[6]

> [6] See, for example, the July 22, 2011 Confidentiality Agreement between Fletcher Asset Management on behalf of itself and its affiliates and the Louisiana Officials on behalf of three Louisiana pension funds (Exhibit B) which facilitated the 2011 confidential Ernst & Young report that "corroborated" valuations. (Exhibit C). See also, my *pro se* failed attempt to remove the lawsuit filed by my former counsel Kasowitz Benson against me (Exhibit D). Other examples include, the Trustee's early decision to waive "all privileges" of the Debtor despite ongoing litigation with the Ernst & Young Joint Official Liquidators and Ion Geophysical and pending litigation with Credit Suisse and News Corporation. Another is the Trustee's "Release and Waiver" granted, at the request of the Ernst & Young Joint Official Liquidators, in favor of United Community Banks and a wide list of associates in exchange for virtually or actually no consideration to the estate. At the time it received the Release and Waiver, the Bank, whose securities were a dominant portion of the Debtor's portfolio in 2011 and 2012 and whose conduct had a material impact on the Debtor, had a) breached its Security Purchase Agreement with Fletcher International, Ltd., b) breached its Asset Purchase Agreement with Fletcher International, Inc., and c) disregarded the Trustee's demand that the Bank honor the automatic stay with regard to assets related to an affiliate of the Debtor.