```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     IN RE:
 3   FLETCHER INTERNATIONAL, LTD.,
                 Debtor,
 4
     STEWART TURNER,
 5   ALPHONSE FLETCHER, JR.,

 6               Appellants,

 7         v.                                14 CV 2836 (WHP)

 8   RICHARD J. DAVIS, Chapter 11
     Trustee of Fletcher
 9   International, Ltd.,

10               Appellee.

11   ------------------------------x
                                             New York, N.Y.
12                                           September 11, 2014
                                             4:10 p.m.
13
     Before:
14
                     HON. WILLIAM H. PAULEY III,
15
                                             District Judge
16
                             APPEARANCES
17
     STEWART TURNER, pro se
18
     ALPHONSE FLETCHER, JR., pro se
19
     LUSKIN STERN & EISLER
20   BY:  MICHAEL LUSKIN

21

22

23

24

25
```

1             THE DEPUTY CLERK:  Matter on for a conference.  In Re:
2    Fletcher International, Limited.
3             Would counsel for the appellant please state his
4    appearance for the record -- or, I should say, the appellant
5    please state his appearance for the record.
6             MR. TURNER:  Stewart Turner, pro se.
7             THE COURT:  Good afternoon, Mr. Turner.
8             Are you on the phone, Mr. Fletcher?
9             MR. FLETCHER:  Yes.  Hello.
10            THE COURT:  This is Judge Pauley.  You're on a
11   speakerphone in my courtroom.  A court reporter is present
12   recording what's being said.
13            MR. FLETCHER:  Thank you.
14            THE COURT:  Mr. Turner has just put in his appearance.
15            Would counsel for the trustee give his appearance.
16            MR. LUSKIN:  Yes.  Good morning, your Honor.  Michael
17   Luskin from Luskin, Stern & Eisler for the trustee.
18            THE COURT:  Good afternoon, Mr. Luskin.
19            And I'm going to ask you to -- you can be seated --
20   when addressing the Court, speak directly into the microphones,
21   otherwise Mr. Fletcher will not be able to hear you.
22            Mr. Luskin, you requested a conference; you sent me a
23   further letter earlier today.
24            What's going on?
25            MR. LUSKIN:  Your Honor, in related cases called

1  Soundview in the bankruptcy court before Judge Gerber,
2  proceedings have been taking place over the summer relating to
3  an account in a fund called Soundview Composite.  There is
4  about $3.8 million in that account.
5          A hearing was held in early August, as recited in the
6  letter, in my letter, continuing a freeze on that account.  And
7  at the request of composite's lawyer, Peter Levine,
8  authorization was sought to use some of that money.  And the
9  end result of that hearing, your Honor, was that Judge Gerber,
10 with the consent of the trustee, the Soundview trustee,
11 authorized the release of $100,000 from the account; the
12 account is maintained at Wilmington Trust.  $100,000 to be used
13 for two purposes:
14         One, $50,000 to the law firm of Scher Tremonte, which
15 is Composite's SEC counsel, representing Composite in
16 connection with an ongoing SEC investigation; and $50,000 for
17 Mr. Levine.  That record was so ordered on August 8th.  You
18 have the transcript of that hearing.
19         On August 12th, $100,000 was wired out of Wilmington
20 Trust to one of the Fletcher-controlled entities called
21 Richcourt USA.  And from there, over the next few days, over
22 $93,000 of that money was used for purposes that included
23 $25,000 to Scher Tremonte -- not the 50,000, but 25,000 -- and
24 the balance of that money was used for unauthorized expenses,
25 including the two cost bonds that were posted in this Court.

1          The other expenses or other uses that that money was
2    put to were 5,000 to Mr. Turner, 5,000 to Mr. Fletcher, 15,000
3    to other insiders, other amounts to other law firms for other
4    purposes.
5          When Mr. Levine discovered that he hadn't been paid
6    and he couldn't confirm that the Scher Tremonte firm had been
7    paid, he wrote to Judge Gerber on August 26th requesting a
8    hearing to determine what to do.  He was seeking to withdraw as
9    counsel.  He was asking the Court to direct a return of the
10   money.  And at that point I advised Judge Gerber that it
11   appeared that $15,000 of the money had ended up here for the
12   bonds on the appeal of the UCPI settlement.
13         Judge Gerber conducted a hearing on September 3rd.  At
14   the September 3rd hearing, again, as recited in the letter, the
15   Court heard from Peter Levine, Composite's lawyer, seeking to
16   withdraw; he heard from a William Hine, a partner at Jones Day,
17   counsel for the Soundview trustee; he heard from me.  I just
18   laid out the chronology and advised Judge Gerber that I felt it
19   incumbent on me to advise this Court as to where the $15,000
20   had come from.  And Judge Gerber heard from Mr. Fletcher.
21   There is a transcript of that hearing that is before your
22   Honor.
23         At the end of Judge Gerber's questioning of
24   Mr. Fletcher and some brief replies, Judge Gerber made some
25   specific rulings.  He granted Mr. Levine's motion to withdraw

as counsel; he granted the motion to be paid what he's owed, which is $50,000; and he directed that the balance of the money be returned to Wilmington Trust. He also issued specific findings and conclusions. I think foremost among them, that there was nothing ambiguous about his August 8th order; that the restraints on the account would remain in place; and that the earlier order authorizing the $100,000 was clear, and made clear that the money was only to be used for the two payments: Mr. Levine's fees, and the Scher Tremonte retainer.

The Court found that it had never authorized the use of Composite's money for director's fees or management fees or cost bonds or any other purpose. And the Court found that Mr. Fletcher should have known this, and the Soundview trustee had reserved her rights to move for contempt in the bankruptcy court.

With respect to the cost bonds, Judge Gerber said that -- and I'm quoting -- he had a problem with Mr. Fletcher and Mr. Turner gambling on an appeal of Judge Pauley's order with money that I determined should never have been posted in the first place. But he also felt that as a matter of comity, since the money is under this Court's jurisdiction, that he should defer to your Honor as to what should happen.

And the final point that Judge Gerber directed was that Mr. Levine should settle an order on two days' notice, which he's done. The settlement deadline is actually at 4

1    o'clock this afternoon; but, as far as I know, no order has yet

2    been issued, although the transcript was so ordered. Judge

3    Gerber was very specific about that.

4            We're here today, as your Honor noted, at my request,

5    because, frankly, I believe that Judge Gerber's orders have

6    been clear; they've clearly been violated; that there's a clear

7    order to comply with them; and that neither Mr. Turner nor

8    Mr. Fletcher should be allowed to benefit, unjust enrichment;

9    they shouldn't be allowed to enrich themselves from their

10   violation of clear bankruptcy court orders. And the burden

11   clearly has to be on them in the bankruptcy court to prove that

12   what they did was authorized, and they have failed to do that.

13           Now, I don't know what is going to happen in the

14   bankruptcy court. I believe the Soundview trustee will move

15   for contempt. That hasn't happened yet. I don't know whether

16   Mr. Fletcher, Mr. Turner will seek redress from that order; I'm

17   not sure that there is any basis to.

18           But, as we sit here today, there are clear orders that

19   must be complied with. The fruits of their wrongdoing are

20   sitting in the court registry here, and they should not be

21   allowed to profit from that.

22           I believe in my letter I also mentioned a possible

23   motion for sanctions. And I think my view on that is that

24   would be appropriately done by the Soundview trustee in the

25   bankruptcy court. What I'm seeking here is that the bonds be

1   vacated, the money be either frozen here or returned to the
2   bankruptcy court for further disposition, as Judge Gerber may
3   order.
4            THE COURT:  What's the jurisdictional basis for me to
5   do anything?
6            MR. LUSKIN:  I think the jurisdictional basis for you
7   to do anything is that the money is here by reason of your
8   order, your decision.  And I think that it's within the power
9   of this Court to set the terms and conditions of that cost
10  bond, and to dispose of it as the facts warrant.
11           I think that the jurisdictional basis is FRAP 7, a
12  rule that authorizes you to set that bond in the first place,
13  and it allows you to impose conditions.  And I think that under
14  just the general powers of the Court to enforce its orders, you
15  have the power, if you have been -- I'm not sure that this
16  Court was actively deceived, but I think that the bankruptcy
17  court was certainly, I think -- "deceived" is not too strong a
18  word.  I think that will be the basis of the jurisdiction.
19           I think, to be precise, you have absolute power to
20  vacate the bonds that you've set.  That's just in aid of prior
21  orders.  I think that disposing of the money, my own view, my
22  personal view, with respect, would be just to freeze it pending
23  further order of the bankruptcy court, who clearly has the
24  greatest interest in determining what to do with it.
25           THE COURT:  All right.  Mr. Turner, why shouldn't I

1    vacate the bond?

2           MR. TURNER:  I believe the bond should not be vacated
3    because the bond was provided, I believe, on a good-faith
4    effort on my part.  I do not think this Court was deceived, as
5    Mr. Luskin has said.

6           Judge Gerber, in the bankruptcy court, may have been
7    deceived by Composite attorney Levine.  When I filed my
8    response to Mr. Luskin's letter of the 4th, I sent it to the
9    Court on the 5th, I quoted from the August 8th transcript.
10   From the passages that I quoted, it was certainly not clear
11   that Judge Gerber was ruling that 50,000 should go to Tremonte,
12   and 50,000 should go to Peter Levine.  Had he done so, it would
13   be clear in the transcript, and I will touch upon the
14   transcript in a moment.

15          I also included an affidavit from Floyd Saunders, an
16   attorney, although he is -- this was done in his role as
17   corporate secretary of Soundview Composite.  Mr. Saunders is a
18   member of the New York Bar, as is Mr. Levine.  They have
19   challenged each other.  Mr. Saunders, in his affidavit, made
20   comments about Mr. Levine, saying that Mr. Levine changed his
21   story.  Mr. Levine, in his response that was forwarded, I
22   think, yesterday, recently, or the September 8th issuance to
23   Judge Gerber's bankruptcy court was sent here soon after, I
24   believe yesterday, and Mr. Luskin in today's letter cites four
25   pages of Mr. Levine's affidavit.

1                I would like to share a timeline of events that
2     happened up to the bond being sent to this Court.  Mr. Fletcher
3     will probably speak on his behalf while I refer to the bonds.
4     I think the story is correct for both of them, but Mr. Fletcher
5     should speak on his behalf.
6                THE COURT:  Before you do that, have you reviewed the
7     September 3 transcript of the proceedings before Bankruptcy
8     Judge Gerber?
9                MR. TURNER:  I have reviewed the September 3
10    transcript.
11               THE COURT:  Is there any doubt in your mind now about
12    what the bankruptcy court's view is of Mr. Fletcher's use of
13    the funds?
14               MR. TURNER:  I think Judge Gerber was impacted by what
15    Mr. Levine said in court.  Mr. Levine's story changed between
16    August 8th, August 13th, when the bonds were posted, and to his
17    letter to the Court, causing Judge Gerber to change what I
18    believe was not a clear order.  And, if anything, he said that
19    the money was available to Soundview Capital Management and to
20    insiders.  I can get the direct quote for you here, if you bear
21    with me one second.
22               Mr. Hine, the counsel to the Soundview Elite
23    trustee --
24               THE COURT:  Why don't you try telling me what page
25    you're reading from.

         MR. TURNER:  Page 33 of the August 8th transcript, lines 21 to 25, and it rolls over to line 22 on the next page.
         MR. LUSKIN:  I'm sorry, what page was that?
         MR. TURNER:  Page 33, lines 21 to 25, and page 34 -- these are transcript pages; page 34, line 22.
         THE COURT:  All right.  I've read them.
         But doesn't Mr. Hine make it clear on page 28, and the Court says:  "It's 50,000 for Mr. Levine.  What is it for Tremonte?
"A.  I think it's 50,000 for Scher Tremonte, as well, is what we ask.
         "The Court:  So it's a total of 100,000?
         "Mr. Hine:  Yes, your Honor.
         "The Court:  50,000 for each?"
         MR. TURNER:  Yes.  But later in the transcript, your Honor, with all of that said, Mr. Hine has consented to -- this is page 38, lines 20 to 25, and rolling over to page 39.  Shall I read it out loud or --
         THE COURT:  It's not necessary, because I'm reading it right now.
         What's ambiguous about that?
         MR. TURNER:  That to meet the SEC's legitimate legal expenses that are under discussion here, to meet the SEC's legitimate investigatory needs is definitive.  But Judge Gerber also says:  "And I have no objection to paying Levine from that

1    $100,000 for work he previously did, so long as it's understood

2    that this is a credit against amounts that would otherwise be

3    on account of the obligations for which they are being paid."

4             In the following paragraph, he specifically says

5    except -- this is line 7 through 11.  "Except for my

6    willingness to allow the $100,000 to be paid on account of the

7    creditor obligation, and the creditor obligation is to the

8    investment manager, Soundview Capital Management.  And I

9    understand that the creditor obligation as to the Fletcher

10   entities, it is to insiders."

11            He does not say anything -- it's about legal fees that

12   had previously been paid by Soundview Composite.  Mr. Levine

13   was retained by Soundview Composite.  He received his initial

14   $25,000 from Soundview Composite.  He received an additional

15   50,000 from Soundview Composite.

16            Tremonte, the original request --

17            THE COURT:  How does any of that have anything to do

18   with posting a bond on your behalf and on behalf of

19   Mr. Fletcher in the appeal before me?

20            MR. TURNER:  Because in lines 9 and 10 here on page

21   39, Judge Gerber says:  "I understand that the creditor

22   obligations is to the Fletcher entities, it is to insiders, it

23   was paid to Soundview Capital Management.  I requested from the

24   directors of Soundview Capital Management, Mr. Fletcher, and

25   Mr. Ladner that money be paid for these bonds."

1            If you read these lines, it is to insiders, and the
2     insiders, Mr. Ladner and Mr. Fletcher, were willing to pay the
3     bond -- bonds, plural.
4            THE COURT:  You can say that, but it doesn't make it
5     true, and it's not a plain reading.
6            MR. TURNER:  If I may continue.
7            THE COURT:  No.
8            MR. TURNER:  If I may continue with the timeline.
9            THE COURT:  No, you may not.  I want to hear from
10    Mr. Fletcher for a moment, and then I'm going to fix a briefing
11    schedule.  I just hope that the Soundview trustee wakes up and
12    files a contempt motion in the bankruptcy court.
13           Go ahead, Mr. Fletcher.
14           MR. FLETCHER:  Thank you, your Honor.
15           THE COURT:  Make a few comments so that you can aid in
16    the contempt motion.  Because I really think that if the
17    opportunity comes that I get to see you, I suggest you bring
18    your toothbrush.  Do you understand?
19           MR. FLETCHER:  I'm afraid I do not, your Honor.
20           THE COURT:  Okay.  Well, you'll think about that.
21    Because you won't be going home.
22           Now, tell me exactly why you felt that you could take
23    $15,000 that was released by the bankruptcy court and tender it
24    in two checks to this Court to post the bond.
25           MR. FLETCHER:  Well, your Honor, I think, first, that

1    the premise of that question is, at a minimum, not clear, if
2    not correct.
3             THE COURT:  Where did you get the $15,000 that you
4    tendered to this Court in two checks to post the bond on behalf
5    of yourself and Mr. Turner?
6             MR. FLETCHER:  Richcourt USA, an affiliate of ours,
7    posted the $15,000.
8             THE COURT:  Where did Richcourt, an affiliate of yours
9    and Mr. Turner's, get that money?
10            MR. FLETCHER:  It receives money from a number of
11   sources.  But, in particular, you're pointing to the $100,000
12   wire --
13            THE COURT:  I'm not pointing to anything.  I'm asking
14   you to tell me precisely where the entity got the $15,000 that
15   it paid into the clerk's office of this Court pursuant to my
16   order.  Very simple question.
17            MR. FLETCHER:  It got that from its bank account.  Its
18   bank account receives wires from any number of sources, but the
19   source that it received a wire from most immediately before or
20   prior to that wire was a wire from Soundview Composite on
21   account of the Soundview Capital Management claim.
22            THE COURT:  Are you telling me that you paid for the
23   bonds through the $100,000 wire transfer from Wilmington Trust?
24            MR. FLETCHER:  I said to the extent that we're saying
25   Wilmington Trust -- or the Composite account of Wilmington

1   Trust sent funds to Richcourt USA, and Richcourt USA later paid
2   the bond, that is true.  I don't believe it is fair to track --
3   I don't believe it's fair to say that anything Richcourt USA
4   does is connected to Composite.
5             THE COURT:  I'll put the question to you again.  It's
6   a very simple question; it calls for a yes or a no answer,
7   Mr. Fletcher.
8             Did Richcourt pay the $15,000 for the two bonds from
9   among the $100,000 in funds that were wired to it from the
10  Soundview account at Wilmington Trust?
11            MR. FLETCHER:  Your Honor, the only way the answer to
12  that question could be yes is if Richcourt USA had no other
13  cash, access to cash or whatever.  And I don't believe that is
14  the case.
15            THE COURT:  So is the answer no?  Is that what you're
16  telling this Court?
17            MR. FLETCHER:  I believe that what I'm telling the
18  Court is that if an entity receives --
19            THE COURT:  You know what?  I think, Mr. Fletcher,
20  that the game is up, all right.  I am not going to conduct
21  further proceedings with you over the telephone.  I want you in
22  my courtroom where I can place you under oath.  It's as simple
23  as that.
24            So I had hoped that the two of you would just consent
25  to the vacatur of the bond so that the funds could be turned

1    over to the bankruptcy court to be dealt with as Judge Gerber
2    sees fit.  But if that's not the case, Mr. Luskin, when do you
3    want to file your motion?  Because I'm going to order Fletcher
4    and Turner to show cause why the bonds should not be vacated
5    and the funds returned to the bankruptcy court for the
6    bankruptcy clerk to do with as directed by Bankruptcy Judge
7    Gerber.
8             MR. LUSKIN:  Your Honor, I'll file the motion.  Today
9    is Thursday.  I'll file the motion next Thursday, next Friday.
10            I would just add that the admitted chronology here is
11   that on August 12th, the day of the wire, and before August
12   12th, none of these bills had been paid, the bonds, the insider
13   payments, and so on.  And on August 13th, they had been.
14            To force the trustees to engage in some kind of
15   tracing argument seems to me to be unfair, when it's as
16   apparent as it is, and given what Mr. Fletcher just said, the
17   money from the bonds came from the 100,000.
18            I'm happy to brief it; I'm happy to make the motion.
19   It just seems to me that freezing the money or returning it to
20   the bankruptcy court registry is something that could be done
21   without all of that time and work, frankly, your Honor.
22            One of the reasons I say this is that both these
23   gentlemen's merits briefs on the appeal are due next week.  And
24   if these bonds are vacated, there should be no appeal.  I'm
25   happy to file the papers, your Honor; I heard what you said.

1           THE COURT:  If the bonds are vacated and they file
2    their briefs, their briefs will be stricken.
3           MR. LUSKIN:  Absolutely correct, your Honor.
4           THE COURT:  So here's what I'm going to do.  I'm going
5    to issue an order to show cause on my own motion directing
6    Messrs. Fletcher and Turner to show cause why the two $7500
7    bonds should not be vacated in this case, and the money turned
8    over to the bankruptcy clerk to await a further direction from
9    Bankruptcy Judge Gerber, since it seems to me that it's
10   Bankruptcy Judge Gerber's order that has been violated here.
11          And, gentlemen, I'm going to require you to show cause
12   and to submit papers to me by September 18th.  And I'm going to
13   direct you to appear in my courtroom on October 2 at 3 o'clock.
14   And the two of you can avoid these proceedings by simply
15   consenting to the vacatur of the bonds.  It's as simple as
16   that.
17          So, Mr. Fletcher, I'll see you on October 2.
18          MR. FLETCHER:  Thank you for the opportunity to
19   address this in a clear, organized manner.  I appreciate it.  I
20   don't feel as if the full story has been made available to me
21   yet, and this will be a good opportunity.  Thank you.
22          THE COURT:  Anything further, Mr. Luskin?
23          MR. LUSKIN:  No, your Honor.  I'll put my reply papers
24   in in advance, obviously, of the hearing.  I'll get them to you
25   at least a day or two before.

E9BVFLEC                         Conference

1            THE COURT:  By September 30.
2            MR. LUSKIN:  Done.
3            THE COURT:  Have a good afternoon.
4            MR. LUSKIN:  Thank you, your Honor.
5            MR. TURNER:  Thank you, your Honor.
6            MR. FLETCHER:  Thank you, your Honor.
7                           *   *   *